All right our fourth case for this morning is Flint against Carr and we have Mr. Gansner and Mr. Rosenau. So Mr. Gansner you may proceed. Thank you. May it please the court. My name is Anderson Gansner and I represent the petitioner Antwon Flint. At its core this is a simple case. Mr. Flint's original trial judge made a glaring error. He granted a mistrial because of a completely inconsequential comment. It was this quote my client thinking he's being cooperative talks to them says yes I know Kenneth Cooper. He and I have been childhood friends. Defense counsel said this during her opening statement right after the prosecutor had told the jury two of those exact same things. One that Mr. Cooper the state's main witness was old friends with Mr. Flint and two that police had talked to Mr. Flint. So nothing that defense counsel said was remotely prejudicial or controversial and granting a mistrial here violated federal constitutional law. Mistrial should be granted only quote with the greatest caution under urgent circumstances and for very plain and obvious causes. And specifically when something happens that may irretrievably taint the jury. And that just did not happen here. So Mr. Gansner when this case finally wended its way around to the district the federal district court judge Judge Griesbach very experienced judge. He very frankly said you know I might not have resolved this. I probably wouldn't have resolved this the same way. But there's a tremendous amount of discretion that trial judges have in deciding whether to grant a mistrial. The prosecutor was certainly urging the original judge number one to do that because he thought it just put a different spin on Mr. Flint's relationship with Cooper and his cooperativeness and all the rest of that. And you know as Judge Griesbach said you know maybe that was an overreaction. But was it so far out of line that the extreme remedy of habeas is required. Your Honor the answer is yes. And I think that that's revealed when you look at the full record or at least the lack of record here. So when the prosecutor makes his mistrial you know his motion for a mistrial the state court judge listens to them and at no point during any part of that conversation is there any mention of prejudice. They never use the term bias or taint. They say the jury heard some heard some hearsay so we have to declare a mistrial. Can't that be implied though from the trial court statements. You don't have to use magic words. I completely agree. The judge doesn't have to say manifest necessity. The judge doesn't have to say prejudice but there needs to be a record. And that's why I think the analysis is kind of twofold. You look at what was actually said and in terms of that being prejudicial in some way it just it doesn't make any sense because the piece of hearsay that the state objected to was something that actually supported the state. Was that the main witness. But there's another aspect of which at least you can address for me. The first trial judge certainly didn't spell out things the way you're saying he should have and maybe that was a mistake. But by the time you get to Judge Schroeder he's very focused on manifest necessity. He gets the transcript. He talks to the first judge. He I don't know what else he could have looked at frankly that would have shed light on it. And shouldn't we as a federal court also take into account that examination that Judge Schroeder made. I don't believe the case law supports looking at sort of what a second judge made of the mistrial declaration. I think the record is really confined to the mistrial declaration itself. And in this case again it's it's three and a half pages. There's no break for research like there was in Arizona versus Washington where there was obviously a vastly more prejudicial statement made where they said was in the state hid exculpatory evidence from us. That's why we're here for another trial. Instead we were talking about a pivoting statement that has no apparent relevance and there's no discussion of whether the jury might have been affected in any way. They don't talk about a limiting instruction. But what about the Wisconsin Court of Appeals assessment which if EDPA deference applies we certainly have to give deference to where the appellate court found that it was reasonable essentially saying that the statements implied that Flint was cooperating with police and therefore lacked a consciousness of guilt. We have to give deference to that. Well there should be deference to if the Wisconsin Court of Appeals had addressed that that matter on the merits and our position is and we think it's supported by decades of this court's case law is that the state the state appellate court addressed Mr. And then as you noted it goes on to mention it a bit within the ineffective assistance of of counsel argument. But there's there's no case law in this circuit beyond sturgeon which doesn't apply because there wasn't a clear procedural ruling stating that that within an effective assistance of counsel claim analysis merits EDPA deference. But what about Murdoch versus Dorothy eight four six F third two or three. Isn't that determination of adjudication on the merits made within the effective assistance of counsel context there. It's sort of backwards there. Judge what happens in Murdoch is that they're an ineffective assistance of counsel claim was raised and that that was the claim at issue and in resolving that claim the state appellate court just looked at the merits of the underlying error. Right. What they are alleging that the state the person's defense counsel had done wrongly and don't have that. I mean I can imagine ineffectiveness of counsel cases where you know with this double layered deference that the Supreme Court talks about in Harrington against Richter and other cases you might say well here's the allegation about defective performance but we're required to give the benefit of the doubt and we're required to do that and on top of that the state court's assessment of all that has to be reasonable. So so you're a couple of steps removed in some cases from an actual ruling on whether the lawyer made a mistake in performance. This court reads a lot like a ruling in the alternative basically cuts right through and says it can't be defective performance if the problem is that you failed to raise an objection with no merit. And that's what we think happened here. It does say that in addressing the ineffectiveness of counsel claim but then it's it's that kind of sharp contrast with how it deals with a double jeopardy claim where it explicitly says it was you know it was forfeited. It doesn't say in the alternative. It doesn't say even if we were to look at the merits. This is what we do. But why is that under Sturgeon? Why is that mutually exclusive? He certainly found the procedural default but but as Judge Wood pointed out he specifically addressed in a substantive way the double jeopardy point. Right. So the state appellate court does get to it. We don't deny that within the ineffective assistance of appellate counsel argument. And I'm just saying there might be some instances in which the argument you're making would have merit but then there may be other instances where the state appellate court is looking at that performance argument, never mind prejudice, looking at the performance argument and actually just says of course it wasn't defective performance. It was fine. There was no there was no error. And so let me just throw in one other question. Suppose we agreed with you that that that is just sort of structurally impossible to use the underlying ruling just for the sake of argument. That just takes us back to the pre-EDPA standard and again there still was a lot of deference given to what the state courts did at that point. That's true, Judge. But what, excuse me, that's true, Judge. But what the Supreme Court says is you get judicial discretion if the record reflects that it's been scrupulously exercised, that they've been very careful in terms of how they exercise their discretion. Like in Arizona versus Washington where they took a break to brief the issue to see whether it might be admissible. Here we're dealing with a summary declaration of a mistrial in three pages of transcript. So I think that is the difference, just that the record doesn't reflect that there was a, quote, scrupulous exercise of judicial discretion. But they were the parts of the transcript that dealt with exactly the statement for which the court declared a mistrial and the state court's assessment as to why. So I'm not sure what else could they have provided the court. I think what they could have done is walk through what else was an option. First of all, there could have been a kind of a more searching discussion of whether it was even hearsay to begin with. They could have talked about a limited instruction. They could have just emphasized to the jury once again, defense counsel's arguments are not evidence, which the court had actually told the jury twice already. So there was many, many different things they could have done to address any possible prejudice. But when you look at the statement itself, it simply doesn't appear prejudicial at all. Given that the unknowing hearsay supported the state's own argument and the prosecutor had said it himself just a minute earlier. I notice I'm almost out of time, so I should concede to Mr. Rosenau. Thank you. Mr. Rosenau, when you begin, let me ask you about one of the troubling parts of this record, at least for me, which is that the state pops up and asks for a mistrial. It seems to me, based on pretty thin cause, and two days later, you improve your case. You locate Latoya Moore, give her a deal. So the case that you wind up trying is a much more solid case than the case you would have had, had it not been for this fortuitous mistrial. So that's troublesome. Okay, thank you, Your Honor. Yes. So I'm attorney Scott Rosenau for the respondent. And I'd like to, I will address the merits, obviously, of the double jeopardy issue in the mistrial ruling, but I would like to begin at least. And I see that my timer hasn't started yet, but I assume the clerk's office will fix that. There it goes. Yes, thank you for the reminder. If attorney Gansner wants a few extra seconds, that's fine to compensate. So I do want to start briefly by talking about the procedural default issue because Flint didn't raise that argument until his reply brief, so I haven't had a chance to respond to it yet. So the state's position is that Flint's sole ground for relief is defaulted on federal habeas review because the state appellate court rejected it on alternative forfeiture grounds. But you know, the troublesome thing about that argument, I mean, I was actually quite persuaded by what Judge Griesbach had to say about it, is by the time Judge Schroeder, first of all, there's nothing in state law that requires this motion to dismiss before the second proceeding requires. It could be the day before, it could be three weeks before. State law is silent on that. Jeopardy had not yet attached in the second trial, so it really hadn't started yet. And on top of all of that, Judge Schroeder says, after he raises the point, the defendant doesn't have to make a new motion just because there's a new judge in the case. Confirms that she opposed the mistrial, and you seem to think at that point the defense counsel should have butted in and said, even though I don't have to make a new motion, just to be safe, I'm moving to dismiss based on this double jeopardy point, when it's obvious that that's exactly what Judge Schroeder is investigating. So I'm at a loss to see, other than the most rigid formalism, which Lee against Kemna does not seem to support, what merit there is in this forfeiture argument. Sure. So a few things to respond to. So first of all, Flint, in his reply brief, does not dispute that Wisconsin's Mink Rule requires a motion to dismiss before the retrial begins. And that's what case law, including State v. Kohler, says. And they have the functional equivalent of that before the new trial begins, when Judge Schroeder says, I want to get clear on a couple of things. What happened at the last trial? Then there's this whole exchange that takes place. He's being very conscientious. I mean, it's quite admirable, but it just doesn't seem to me that there is any opportunity at the state level, especially since he tells the defendant, you don't have to make a new motion. And isn't the point of the Mink Rule that it has to be made before jeopardy attaches? No, Your Honor. And that's one other point that Judge Wood made that I wanted to respond to as well. So Flint's position in the reply brief is that the Mink Rule does require a pretrial motion to dismiss. He just thinks his trial didn't begin yet when the trial court, Sue Esponte, ruled against the double jeopardy issue because the jury hadn't been sworn yet. But there are a couple of problems with that approach. One is that it ignores the concept of continuing jeopardy. If a mistrial is granted, at least properly, at the first trial, then jeopardy, which attached at the first trial, continues into the second trial, which is precisely why there's no double jeopardy problem at the second trial because it's not attaching a second time. It already attached. But aren't you confusing cases? Certainly if the defendant asks for a mistrial, jeopardy continues. But this is the smaller subset of mistrials over the defendant's objection. Right. So I believe the distinction. So basically, continuing jeopardy is more of a conclusion than really an analysis. So really, the idea is that if the mistrial is properly granted, then there's continuing jeopardy, which means no double jeopardy problem. If the mistrial is improperly granted, then that severs the jeopardy at the end of the first trial. But even with the continuing jeopardy, it wouldn't stop until the jury's sworn in. Well, the jeopardy begins at the first trial. Basically, under your continuing jeopardy theory, it's impossible for counsel between the moment that the mistrial is declared and the moment the new trial begins to make a timely motion because it's always going to be after the mistrial was declared. And you don't know that you need to move to dismiss until the mistrial is done. It's a catch-22 kind of situation. Well, I don't think it is. So Wisconsin case law does not require, the Mink line of cases does not require a motion to dismiss before jeopardy attaches the second time because that would assume that there's double jeopardy. It requires a motion to dismiss before the retrial begins. And the retrial doesn't begin until you have a jury there. But the jury wasn't sworn yet. Well, the state's position is that the trial began already when the jury entered the courtroom, when the veneer entered the courtroom and they went through jury selection. That's a very weird idea of beginning of trial. What in Wisconsin law says when the veneer marches into the courtroom, the trial has started? Well, Wisconsin case law that says when trials begin and when jeopardy attaches, that looks at the first trial when jeopardy attaches for the first time. The Mink situation is different. It's unique because it's where there is a second trial following a mistrial. So I think Wisconsin courts, if they were to address this specific question, they would adopt the most reasonable view, which is that the Mink rule requires a motion to dismiss before the jury enters the courtroom and before the parties undergo jury selection. Well, under the case of State v. Miller, which is a Wisconsin Court of Appeals case of 1995, the court quotes from an earlier Wisconsin Court of Appeals case, State v. Gonzalez, we have held that a jury trial commences with the administration of the jury's oath. Wisconsin statutes say jeopardy attaches in a jury trial when the selection of the jury has been completed and the jury sworn. The Supreme Court has said in Martinez v. Illinois, a jury trial begins and jeopardy attaches when the jury is sworn. So it makes me think that you're making a desperate procedural argument because you don't want to defend the merits. No, Your Honor. I'll gladly spend the last three minutes talking about the merits, but I just wanted to address the procedural default question because the court shouldn't even get to the merits if the claim is defaulted. Mr. Rosenbaum, time is short. I want to direct you back to Judge Wood's initial question at the beginning of your time. Ms. Moore, the witness who places Mr. Flint at the scene, she had not been interviewed at the time of the second trial. Was it known whether or not she had inculpatory or exculpatory evidence? I don't believe so, Your Honor. And even Flint's briefing acknowledges that the police interviewed Latoya Moore after the first trial, and he conceded in his reply brief that he's not actually arguing that Latoya Moore's testimony at all implicates his double jeopardy argument. His reliance on Latoya Moore is simply to show why a defendant has an important interest in having just a single trial. So I don't think that Latoya Moore really is at all significant to the issue. The issue is whether the trial court properly uses discretion, first of all, and then secondly, whether the state appellate court reasonably upheld that exercise of discretion. Mr. Rosenbaum, I want to focus you in then on the Wisconsin Court of Appeals' opinion, paragraph 16, which says, We thus conclude Flint forfeited these claims, and then it cites Erickson for the idea that the normal procedure in criminal cases is to address a forfeited claim within the rubric of IAC, an effective assistance. Is this the linkage that brings in the mistrial argument, and is this common in Wisconsin Court of Appeals' circumstances to consider this argument within the IAC context? It is, Your Honor. And to be clear, the Court of Appeals did address the merits of the double jeopardy issue in the context of the ineffective assistance framework. And I agree with the defense. Even though there are all these layers of deference that apply, I mean, you're not really reviewing the underlying decision. You're asking a question with a higher threshold, I'll say. The underlying merits are, you know, a level 10. You know, the threshold for finding error in the first instance is at a level 15, and for a federal habeas court, you even have to say that that finding was unreasonable. So it's so far removed from the underlying merits, I'm uncomfortable because the phraseology seemed to be strong. Right, Your Honor, and I think it's important to keep in mind that there are two layers of deference, and I think Judge Griesbach's decision below does a very good job acknowledging that there are two Heitler's of deference. And the one point I'd like to make is that— Which means that you don't have a straightforward ruling from the Wisconsin Court of Appeals on the performance issue, on the effectiveness of counsel. So why should we then—I mean, honestly, I can think of all sorts of circumstances where the state would be screaming if we went and looked at the underlying decision on performance and said, well, that's a ruling on performance, let's go with it. Well, in this case, Your Honor, the appellate court said we are satisfied that the trial court properly exercises discretion when finding that counsel did not prejudice the defense, and that's a merits ruling. One final point, quick point I'd like to make, is that the jury did not know what trial counsel said. All the jury already knew at the first trial was that Flint was friends with Kenneth Cooper. The jury did not know until counsel improperly told the jury that Flint had told police that he was friends in a cooperative gesture. That's why the mistrial was granted. During the second trial, did the state elicit that testimony? The defendant certainly couldn't because it's hearsay, but did the state elicit the cooperation testimony during the second trial? I don't believe so, Your Honor. I believe the testimony was limited to establishing that Flint was friends with Kenneth Cooper, but not that Flint cooperated with police. And the prosecutor made it clear that he was trying to avoid that at the first trial. Thank you. Thank you very much, Mr. Rosenau. Your time is almost up, Mr. Gansner, but I'll give you a full minute. Thank you, Judge. I guess I would just sort of reiterate that what the state is asking this court to do with regard to the standard review issue is essentially create a new rule that has never been adopted by any circuit court after contested briefing. There's the Third Circuit case that we recognize, but that was a decision adopted without contested briefing on the issue. So the state is really asking the court to go out on a limb here so it can use a deference as a shield. And I think the reason, as Judge Wood noted, is the state's doing that on purpose, because the rationale for granting a mistrial here is remarkably weak. We're dealing with a potentially hearsay statement that actually supported the state's case, because it was that the main eyewitness was friends with Mr. Flint, and thus would really be telling the truth because he's not doing this lightly. He's not doing it to carry out some sort of grudge. If the only thing counsel had said is Mr. Flint was cooperating with the police, would that have been hearsay? In other words, is the hearsay part of this statement that they were friends, or is the hearsay part of this statement just a factual statement he was cooperating with the police? The evidence will show that Mr. Flint was cooperating with the police. The hearsay statement is that they were friends. The fact that he spoke with police was mentioned by the prosecutor during the prosecutor's own opening statement of the first trial, and certainly Mr. Flint was free to testify in his own defense, and he could say, yeah, the police interviewed me. He couldn't get into the substance of what he said, but he could say, I tried to cooperate with him, and it's perfectly permissible for his trial counsel to give a preview of that testimony. Okay. Thank you very much. If the court has no further questions. Thank you. All right. Thanks to both counsel. We'll take the case under advice.